UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 4:23-CR-00380-SRC |
| ) | |
| v. ) | |
| ) | |
| SONNY SAGGAR, M.D., and ) | |
| RENITA BARRINGER, ) | |
| ) | |
| Defendants. ) | |

**UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF ITS
MOTION FOR REVIEW OF A RELEASE ORDER PURSUANT TO 18 U.S.C. § 3145**

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Amy E. Sestric and Cort A. VanOstran, Assistant United States Attorneys for said District, and submits its reply in support of its Motion for Review of a Release Order Pursuant to 18 U.S.C. § 3145 (ECF No. 75) (the "Motion"):

Nothing in Dr. Saggar's Response in Opposition to the Government's Section 3145 Motion (ECF No. 79) (the "Response") alters the two critical points that warrant denial of Dr. Saggar's extraordinary request to travel to his home country while on bond: First, allowing him to travel internationally would be an unreasonable amendment to the conditions of his release, because, in his own written words, Dr. Saggar does "want to go and live in England again," and is even willing to relinquish custody of his children.[1] (United States' Mem. in Supp. of Mot., ECF No. 76, Ex. 3

---

[1] Dr. Saggar spends considerable space arguing that the redactions in his emails undermine the candor of the United States. As previously explained in the Government's Memorandum in Support of its Motion (and at the hearing before Judge Bodenhausen), the redactions to the emails were not made by the Government; the redactions were already present when the Government received the emails from counsel for Dr. Saggar's wife. (United States' Mem. in Supp. of Mot.,

at 1–2.) Second, when examined closely, the property that Dr. Saggar seeks to offer as collateral illuminates the lengths to which he is willing to engage in financial maneuvers to attempt to avoid legal accountabilities. The United States will not belabor the information set forth in its original Memorandum in Support of its Motion, on which it continues to stand. The United States will, however, briefly address three points raised by the Response that were not addressed in the Government's prior briefing.

First, contrary to the insinuations in Dr. Saggar's Response, nothing in Judge Bodenhausen's Order Granting Motion to Travel (ECF No. 74) (the "Order") concludes that Dr. Saggar poses no flight risk. In fact, at the hearing held pertaining to Dr. Saggar's request to travel, Judge Bodenhausen *sua sponte* determined that the Order allowing Dr. Saggar to travel should be stayed to allow the United States an opportunity to seek review by the District Court.

Second, the Court should reject Dr. Saggar's complaints that the Government's Motion presents evidence to the Court that was not before Judge Bodenhausen. Dr. Saggar specifically contends the civil judgments against him and his entities[2] (Exhibits 1 and 2 to the Motion) and the Emergency Physician Consultants, Inc. ("EPCI") general ledger (Exhibit 15 to the Motion) should not be considered in determining whether he should be permitted to travel internationally. Dr. Saggar's argument overlooks that motions under 18 U.S.C. § 3145 are reviewed by the District Court *de novo*, and therefore, "the Court may consider the evidence before the magistrate judge and may also consider new evidence presented by the parties." *United States v. Richardson*, No. 1:23-CR-01714-KWR, 2023 WL 8477968, at *1 (D.N.M. Dec. 7, 2023) (citing *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003)); *cf. United States v. Maull*, 773 F.2d 1479, 1484

---

ECF No. 76, at 8 n.3.) The Government does not have unredacted versions of the emails in its possession.
[2] Notably, Dr. Saggar does not contest that the civil judgments are still outstanding.

2

(8th Cir. 1985) (noting "the propriety of the exercise of power by the district court to consider upon *de novo* review grounds other than those considered by the magistrate"). The additional evidence about which Dr. Saggar complains is properly before this Court now.

Relatedly, the Court can and should consider the existence of an additional fraud lawsuit filed just three days ago against Dr. Saggar, Defendant Renita Barringer ("Barringer"), EPCI, and others. (*See Saggar v. Saggar* Pet. for Fraud, Civil Conspiracy, to Pierce the Corporate Veil, & for Constructive Trust, Ex. 1.) In that case, Dr. Saggar's wife accuses Dr. Saggar, Barringer, and others of fraudulently transferring 19 properties—including the one that Dr. Saggar seeks to pledge as collateral here—to EPCI. (*Id.* at 2–5, 14.) She also alleges that, immediately before Dr. Saggar filed for divorce, he withdrew approximately $500,000.00 from an investment account "and deposited those funds into the bank account that he solely controls, in the name of EPCI." (*Id.* at 5.) Dr. Saggar's wife seeks not only damages, but also a constructive trust "on all real estate fraudulently and wrongfully" transferred by Dr. Saggar and Barringer to EPCI. (*Id.* at 12.) In other words, the ownership of the purported collateral is now being litigated in yet another case that, if successful, will result in a judgment ordering its return to Dr. Saggar's wife. The new fraud case only further complicates the status of the collateral and underscores the reasons that Dr. Saggar should not be trusted to travel internationally without supervision.

Finally, although conceding that a "large volume of discovery has been produced," Dr. Saggar bemoans the length of time that discovery has taken while he is "being saddled with all the constraints of being on bond." (Resp., ECF No. 79, at 6.) Since Dr. Saggar was indicted in late July of this year, however, the United States has made seven productions, which are comprised of voluminous materials, including: documentation from the Missouri Board of Registration for the Healing Arts; Medicare and Medicaid enrollment documents and claims data; claims data from

3

private insurance companies; travel records; copies of cellular telephones; data from Missouri's Prescription Drug Monitoring Program; copies of various computers and other electronic devices seized during the search of Dr. Saggar's downtown St. Louis urgent care clinic; and an enormous amount of data from Dr. Saggar's clinics' electronic medical record software system.

As Dr. Saggar is aware, the vast majority of the produced materials (1) were either seized on the same day as his arrest or disclosed to the Government after that date; and (2) comprise complex electronic productions that required weeks of computer processing time to prepare for production. Thus, there has been no unfair delay in discovery, and the Court should likewise reject the factual arguments that Dr. Saggar lodges (Resp., ECF No. 79, at 7–8), which are out-of-place in the context of a request to travel and, in any event, reside within the province of the jury. At trial, the Government will put on evidence to establish that, contrary to Dr. Saggar's arguments, both he and Barringer were responsible for the fraudulent claims for payment made to Medicare and Medicaid.

Dr. Saggar has everything he needs to file pretrial motions. In fact, two are already fully briefed and both have been recommended to be denied as of December 20, 2023.[3] (Defs.' Mot. to Strike Portions of the Indictment, ECF No. 47; Defs.' Mot. to Dismiss Indictment Based on the Court's Lack of Jurisdiction & Mem. in Supp., ECF No. 49; Dec. 20, 2023 Report & Recommendation, ECF No. 80.) The Court should decline Dr. Saggar's invitation to use an extraordinary motion to travel internationally while on bond as a forum in which to raise procedural injustices that do not exist and to address facts that will be resolved by a jury. There is simply no reason to treat Dr. Saggar differently from any other defendant who, like him, presents

---

[3] This includes the motion to dismiss that Dr. Saggar describes as a "legal argument that the indictment is in fact a nullity." (Resp., ECF No. 79, at 7.)

an obvious flight risk if permitted to travel to his home country, where he cannot be supervised, while on bond.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court revoke the Order Granting Motion to Travel (ECF No. 74) or, in the alternative, amend the conditions of Defendant Sonny Saggar, M.D.'s release to expressly prohibit international travel.

Date:  December 22, 2023                   Respectfully submitted,

                                           SAYLER A. FLEMING
                                           United States Attorney


                                           */s/ Amy E. Sestric*
                                           AMY E. SESTRIC, #66219MO
                                           CORT A. VANOSTRAN, #67276MO
                                           Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all Counsel of Record.

/s/ Amy E. Sestric
AMY E. SESTRIC, #66219MO
Assistant United States Attorney