UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No.: 4:23-CR-00380-SRC-PLC |
| ) | |
| SONNY SAGGAR, M.D., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS OBJECTIONS TO THE MAGISTRATE'S R&R REGARDING THE COURT'S LACK OF JURISDICTION**

The purpose of guarantees—and in particular those constitutional guarantees of individual rights that are at the center of this controversy—is precisely to prevent the law from reflecting certain changes in original values that the society adopting the Constitution thinks fundamentally constitutional undesirable.

Antonin Scalia, *Originalism: The Lesser Evil*, 57 U Cin L Rev 849, 862 (1989).

The Government does not dispute that if the grand jury operated under the wrong standard of proof, then the Indictment is void and this Court lacks jurisdiction. The Government likewise offers no refutation of the clear mandate that proper interpretation of the Fifth Amendment is "pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111, 2137 (2022).

Instead, the Government's Response relies on snippets from various cases to suggest this Court should ignore both the historical reality and the Supreme Court's mandate to utilize that historical reality. As discussed below, these small quotes relied upon by the Government are all dicta. And as the Eighth Circuit has clearly articulated, "[a]lthough we give Supreme Court dicta more weight than other judicial dicta as a prophecy of what the Court might hold, it is not binding." *Dahle v. Kijakazi*, 62 F.4th 424, 428 (8th Cir. 2023). "Dictum settles nothing, even in the court that utters it." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 352 n.13 (2005).

1

Plain and simple, the Constitution's "guarantees cannot mean less today than they did the day they were adopted." *United States v. Haymond*, 139 S. Ct. 2369, 2376 (2019), and it "demands more than the continued use of flawed criminal procedures." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1410 (2020) (Sotomayor J., concurring opinion). Circa 1791, the "Grand Jury" meant a standard of proof greater than probable cause. It must mean the same today.

## I.  Blackstone Articulated a Standard Higher Than Probable Cause

Ignoring all the other historical sources,[1] the Government crafts an argument that William Blackstone's assertion that a grand jury must be "thoroughly persuaded of the truth" is the same as probable cause. "The burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence." *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993). *See also*, Eighth Circuit Model Instructions 3.04 ("A fact has been proved [by the greater weight of the evidence], if you find that it is more likely true than not true."). Yet, probable cause is even a lower standard than preponderance. It defies logic to identify being "thoroughly persuaded" as even less than more probable than not. Both Webster-Meriam and Cambridge define "thoroughly" as the concept of "complete."[2] Being completely persuaded can never be simply more probable than not, and most certainly not something less than more probable than not.

---

[1] Supreme Court Justice Wilson, a Founding Father, "who may be assumed to have known the current practice," and Supreme Court Justice Field, whose grand jury charge could not have "better illustrated" the importance of the grand jury, and Justices Robert Taney and Samuel Chase all required significantly more than probable cause (not to mention the legal scholars who most closely looked at the evidence circa 1791).

[2] Merriam-Webster's Thesaurus for "thoroughly" includes among others, "completely," "exhaustively," "fully," "totally," "extensively," "definitely," "conclusively," "absolutely," and "entirely."

In doing so, the Government does not appear to dispute that the Supreme Court has not in fact **held** that probable cause is the legal standard of proof necessary to return an Indictment but has instead "**described the standard** for the return of grand jury indictments as probable cause." (Doc. 92, at 1-2) (emphasis added). To describe a proposition is not the same as to hold it in a case where the proposition is disputed. Such reasoning simply risks "baking in" or "crystallizing" erroneous logic or lack of clarity in a court's explanation.

The Government's claim that "[t]he Supreme Court [in *Beavers*] went [on] to explain this admonition by Blackstone . . . as articulating the very probable cause standard on which grand juries are today instructed," is simply incorrect. Beyond its inclusion in a long quote from Blackstone, *Beavers* makes no reference to the idea of "thoroughly persuaded." Nothing in the opinion suggests the parties were debating the grand jury standard of proof. Moreover, even the Government has previously acknowledged to the Supreme Court that Blackstone and other historical writers indicated a standard higher than probable cause:

> There are, it is true, occasional observations to the effect that since the accused has no chance to present evidence to the grand jury, **the "proof of the offence should be substantial"** (2 Hawkins, *Pleas of the Crown,* 367), and that a "grand jury * * * ought to **be thoroughly persuaded of the truth of an indictment**, so far as their evidence goes; and not rest satisfied merely with remote probabilities: a doctrine that might be applied to very oppressive purposes." 4 Blackstone, *Commentaries* (Chitty, 1866), 247. And see 1 Chitty, *Criminal Law* (1847 Ed.) 318-319. (emphasis added). **But such commentaries seem to have been only in the nature of advice.**

*Costello v. U.S.,* 1955 WL 72457, 21-22 (U.S., 2006) (Brief for the United States) (emphasis added). Certainly, the Government would not have tried to minimize the statements ("only in the nature of advice") if they were the same as probable cause.

Though *Beavers* does quote Blackstone, it gives his position on grand jury's standard of proof no attention whatsoever. The opinion does not comment on Blackstone "thoroughly persuaded" and it does not offer opposing sources because determining whether the standard of

3

proof is merely probable cause or something greater, was unnecessary to its holding that an indictment (based at least on probable cause) is sufficient evidence for removal. Given the undisputable definition of "thoroughly," if "thoroughly persuaded" had the same meaning in *Beavers* as probable cause, that could only be if the probable cause standard in 1904 had a meaning fair greater than it does today. As one noted scholar said just a few years after *Beavers*, "[t]he better and more modern rule, as stated by Blackstone, is that 'a grand jury ought to be thoroughly persuaded of the truth of an indictment, so far as their evidence goes, and not rest satisfied with remote possibilities.' In other words, the grand jury ought not to indict unless they are convinced that the accused is guilty and that the evidence before them is sufficient, if unexplained and uncontradicted, to convict him." 1 H.C. Underhill, *A Treatise on the Law of Criminal Evidence* § 28, at 51 (1910). Judge Thomas Waites's 1789 charge to a South Carolina grand jury also demonstrates Blackstone meant more than probable cause: "[Y]ou ought to be thoroughly persuaded of the truth of an indictment, as far as the evidence goes, before you assent to it; and ought not to send a person to his trial upon probable grounds only, and the mere presumption of criminality." G*entlemen of the Grand Jury: The Surviving Grand Jury Charges from Colonial, State, and Lower Federal Courts before 1801*, vol. 1-2 (2012) (Stanton D. Krauss, ed.)*,* at 1243.

The Supreme Court certainly never equated "thoroughly persuaded" with meaning less than more likely than not.

**II.     The Government Cites Nothing But Dicta.**

Defendants first note that the Government's reliance on *Gerstein v. Pugh*, 420 U.S. 103, 118 n.19 (1975) – for the proposition that "the Court **has held that** an indictment, fair upon its face, and returned by a properly constituted grand jury, conclusively determines the existence of probable cause" – is completely misplaced. *See* Gov't Response (Doc. 248) at 1-2 (emphasis in

4

original). First, it relies on a footnote, which, by definition, is dicta where, as here, it "'could have been deleted without seriously impairing the analytical foundations of the holding' ...." *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004) (quoting *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000)). *See also Cunningham v. Matrix Fin. Services, LLC*, 531 F. Supp. 3d 1164, 1176 (E.D. Tex. 2021) ("For starters, footnote twelve is, by definition, dictum"). Moreover, "[a] judge's power to bind is limited to the issue that is before him; he cannot transmute dictum into decision by waving a wand and uttering the word 'hold.'" *United States v. Rubin,* 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, J.). "[D]ictum is not converted into holding by forceful utterance, or by preceding with the words 'We hold that ....' " *Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020). See also, *United States v. Files*, 63 F.4th 920, 926 (11th Cir. 2023)("the mere fact that the *Denson* panel *called* its statement a "holding" doesn't make it a holding."); *Dillard v. O'Kelley*, 961 F.3d 1048, 1056 (8th Cir. 2020)  (quoting Judge Friendly, *supra*) (Colloton, J. concurring).

Any analysis of *Ex parte United States (*cited in *Gerstein)*, or any other case, under the standard for assessing dicta set out below, demonstrates each quote relied on by the Government is mere dicta.

Dicta is "broad language **unnecessary to the Court's decision** [which] cannot be considered binding authority." *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.,* 551 U.S. 449, 476 (2007)(emphasis added). Courts "are not bound to follow our dicta in a prior case **in which the point now at issue was not fully debated**." *Cent. Virginia Cmty. Coll. v. Katz,* 546 U.S. 356, 363 (2006) (emphasis added). When the court has "**never squarely addressed the issue, and [has] at most assumed the [legal conclusion]**, we are free to address the issue on the merits." *Brecht v. Abrahamson*, 507 U.S. 619, 630–31 (1993) (emphasis added).

### A. The Supreme Court and Eighth Circuit Guidance on Dicta

Understanding what the Supreme Court and Eighth Circuit have said about dicta makes it clear that prior passing references to the grand jury's standard of proof in the cases cited by the Government—which included cases in which the issue being debated was the constitutionality of a Florida procedure whereby a person arrested without a warrant and charged by information could be jailed without an opportunity for probable cause determination, a case considering whether defendants were entitled to challenge grand jury's probable cause determination at pre-trial post-restraint hearing. *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Kaley v. United States*, 571 U.S. 320, 341 (2014)—were all dicta. *Gerstein* itself cited to a case that debated, and condemned, the refusal of the trial court to issue a warrant of arrest following an indictment in claiming that the Court, which was the issue before that court. *See Ex parte U.S.*, 287 U.S. 241, 250, 53 S. Ct. 129, 131, 77 L. Ed. 283 (1932). The Government omits the language "and requires issuance of an arrest warrant without further inquiry" from its citation to *Gerstein*, which is necessary to an accurate account of what the Court actually stated was the holding in *Ex parte U.S.*, which did not involve a discussion of the proper standard to be applied by the grand jury.

The reason for the rule regarding dicta is obvious: sound judicial decision making requires "both a vigorous prosecution and a vigorous defense" of the issues in dispute. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 419 (1978). A court is simply more likely to be right when all the arguments relevant to a particular point are articulated, when a judge thoroughly considers all of those arguments, and when the point is essential to the outcome or decision.

"[W]e are generally not bound by a prior panel's implicit resolution of an issue that was neither raised by the parties nor discussed by the panel." *Streu v. Dormire*, 557 F.3d 960, 964–65 (8th Cir. 2009) (quoting *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37–38 (1952)

6

when further stating, "a prior decision's implicit resolution of an issue that was neither 'raised in briefs or argument nor discussed in the opinion of the Court' is not binding precedent."). *See also, Waters v. Churchill,* 511 U.S. 661, 678 (1994) ("cases cannot be read as foreclosing an argument that they never dealt with.").

As the Supreme Court said, "[t]he Constitution is a written instrument. As such its meaning does not alter. That which it meant when adopted, it means now." *South Carolina v. United States,* 199 U.S. 437, 448 (1905). Therefore, an issue as significant as the grand jury's standard of proof should not be determined by opinions where the original meaning of the Fifth Amendment's requirement of a Grand Jury was never debated. The Government's reliance on court opinions where "[t]he parties did not brief that question, and the court did not address the point after adversarial presentation," Lunsford, 725 F.3d at 864, is completely misplaced. Such undebated statements of a court are "not binding in a future case such as this one that squarely raises the issue under the federal [law]." *Id.* "[T]he Constitution's guarantees cannot mean less today than they did the day they were adopted." *Haymond*, 139 S. Ct. at 2376, and, most certainly, cannot mean less as a result of nothing more than dicta.

**B.  The cited proposition from *Beavers* is Dicta.**

There is no doubt that the court in *Beavers* said that the grand jury found probable cause. But there probable cause was necessary to arrest and remove the defendant to a District different than where he resided. Had the grand jury used a standard of clear and convincing, or "thoroughly persuaded of the truth," or beyond a reasonable doubt, the holding in *Beavers* would have been the same, i.e., there was sufficient evidence to justify removal. Its holding was very straightforward – "It is sufficient for this case to decide, as we do, that the indictment is prima facie evidence of the existence of probable cause." 194 U.S. at 85.  The case did not hold that the grand jury had to make

7

a finding of probable cause – it said the District Court handling the attempted removal had to make a finding of probable cause. And, *Beavers* merely said the District Court could use the grand jury indictment as prima facie evidence to support its (the District Court's) finding of probable cause. As the Supreme Court said just a few years after *Beavers*:

> The circuit judge said, it is true, that probable cause must be shown in order to obtain a removal, but he held that inasmuch as the copy of the indictment alone was regarded as sufficient evidence of probable cause in *Beavers v. Henkel*, 194 U. S. 73, 48 L. Ed. 882, 24 Sup. Ct. Rep. 605, it was sufficient in the present case.

*Tinsley v. Treat*, 205 U.S. 20, 28 (1907). A holding that an indictment is sufficient evidence of probable cause for a removal proceeding is not in any way the same as a holding as to what is the proper grand jury standard of proof. Using the indictment as support that there was probable cause for removal would have been just the same no matter what the grand jury's standard of proof was. Again, clear and convincing, or "thoroughly persuaded of the truth," or beyond a reasonable doubt, would have each netted the same conclusion. Consequently, neither the parties nor the *Beavers* Court had any reason to debate the appropriate grand jury standard of proof, and the suggestion that it makes a finding of "probable cause" was unnecessary to the holding and was only dicta.

Two years after *Beavers* was decided (April 11, 1904), in March, 1906, the Supreme Court issued its opinion in *Hale v. Henkel*, 201 U.S. 43 (1906).[3] The Court first noted that, "the most valuable function of the grand jury was not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony." *Id.* at 59. Assessing "[t]he practice, then [circa 1791], prevailing, with regard to the duty of grand juries," *id*. at 62, the Court cited "Mr. Justice Wilson of this court, who

---

[3] Overruled by *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52 (1964).

8

may be assumed to have known the current practice," *id*.[4] at 61, Supreme Court Justice Field,[5] *id.*, at 63, Joseph Chitty,[6] *id*. at 61, and Pennsylvania Justice Alexander Addison,[7] *id*., at 62. Though not referencing the grand jury standard of proof, the *Hale* Court, just two years after *Beavers*, relied on four historical sources each of whom, **in the same documents cited in *Hale*,** also identified a standard of proof greater than probable cause. *See* Footnotes 3,4,5 and 7.

It is inconceivable that the same Court, only two years apart, would have looked to such noted sources for the proper understanding of "[t]he practice, then, prevailing, with regard to the duty of grand juries," and yet not mention any of them in *Beavers*, unless the statement in *Beavers* was dicta. If the *Beavers* Court had done any analysis, engaged in any debate, heard arguments at all related to the grand jury standard of proof, the opinion would have referenced at least some, if

---

[4] At the same lecture, in the paragraph immediately preceding the one quoted by the *Hale* Court, Justice Wilson stated:
> The doctrine, that a grand jury may rest satisfied merely with probabilities, is a doctrine, dangerous as well as unfounded: It is a doctrine, which may be applied to countenance and promote the vilest and most oppressive purposes: It may be used, in pernicious rotation, as a snare, in which the innocent may be entrapped, and as a screen, under the cover of which the guilty may escape.

See, Exhibit A copy of page from the book. He also included these exact words in a charge to the first federal circuit grand jury to sit in Pennsylvania in 1790. See, James Wilson, Charge to the Grand Jury of the Circuit Court for the District of Penn. (April 12, 1790), *in* 2 The Documentary History of the Sup. Ct. of the United States, 1789-1800 (Maeva Marcus ed., 1988).

[5] Justice Field's specific charge to the grand jury cited in *Hale,*, has also been cited in *Hurtado v. People of State of California*, 110 U.S. 516, 555, (1884), and *Ex parte Bain*, 121 U.S. 1, 10, (1887)("The importance of the part played by the grand jury in England cannot be better illustrated than by the language of Justice FIELD, in a charge to a grand jury, reported in 2 Sawy. 667."), and by the U. S. Solicitor General *U.S. v. Cotton*, 2002 WL 264766 (U.S.), 26(Brief for the United States). His charge to the grand jury included, "you ought not to find an indictment, unless in your judgment, the evidence before you, unexplained and uncontradicted, *would warrant a conviction by a petit jury*."

[6] "[G]reat authorities have taken a more merciful view of the subject and . . . have argued that the grand inquest ought, as far as evidence before them goes, to be convinced of the guilt of the defendant." Joseph Chitty, 1 A Practical Treatise on the Criminal Law 318 (Philadelphia 1816).

[7] Alexander Addison's Charge, Allegheny, Fayette, Washington, & Westmoreland Counties, September, 1792, *in* 2 Gentlemen of the Grand Jury at 814, channeling Blackstone: "For a grand jury ought to be thoroughly persuaded of the truth of an indictment, so far as their evidence goes, and not rest satisfied merely with remote probabilities." Though the Court refers to a 1791 charge to the grand jury, this 1792 grand jury charge appears to be the same that the *Hale* Court was quoting in that the quotes in *Hale* are verbatim in this 1792 charge.

9

not all, of these four historical sources cited two years later in *Hale*. Instead, in proclaiming the grand jury standard was probable cause, *Beavers* cited no source whatsoever, referenced no caselaw nor provided any justification. The explanation for such lacking is obvious – the Court was not asked to determine the grand jury's standard of proof and the statement was dicta.[8] *Beavers* does not control the issue before the Court today.

When courts make statements such as "it may often be true that 'a grand jury might indict a ham sandwich' if asked to do so by a prosecutor", *United States v. Cahill*, 2022 WL 10394481, at *6 (S.D.N.Y. Oct. 18, 2022), the diminishment of the grand jury standard of proof has clearly had a negative impact on the institution of the grand jury as originally intended. The Supreme

---

[8] A review of the Supreme Court's analysis of the requirement of a standard of beyond a reasonable doubt in a criminal case is enlightening. As late as 1970 in our criminal jurisprudence, the Court said, "[e]xpressions in many opinions of this Court indicate that **it has long been assumed** that proof of a criminal charge beyond a reasonable doubt is constitutionally required." *In re Winship*, 397 U.S. 358, 362 (1970)(emphasis added). Agreeing with the majority opinion on this point, Justice Black stated in his dissent, "[t]he Court has never clearly held, however, that proof beyond a reasonable doubt is either expressly or impliedly commanded by any provision of the Constitution." *Id*., at 377 (Black dissenting). In citing examples where it had been "assumed" reasonable doubt was required, the opinion included eight previous Supreme Court cases ranging from 1881 to 1958, including *Miles v. United States*, 103 U.S. 304, 312 (1881)(where the Court stated, "[t]he evidence upon which a jury is justified in returning a verdict of guilty must be sufficient to produce a conviction of guilt, to the exclusion of all reasonable doubt."), *Brinegar v. United States*, 338 U.S. 160, 174 (1949)(where the Court stated, "[g]uilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition."), and *Holland v. United States*, 348 U.S. 121, 126 (1954)(where the Court stated, "the prosecution must always prove the criminal charge beyond a reasonable doubt."). Notwithstanding the definitiveness with which each of those three opinions asserted its claim, the *Winship* Court identified those assertions of the law as assumptions. Tellingly, a review of all eight cases shows that standard of proof was not litigated/debated in any of them – i.e, a decision on the standard of proof was unnecessary to the Court's decision and thus, merely assumed.
    In *The Moses Taylor*, 71 U.S. 411, 419 (1866), the Supreme Court said:
    It is not denied that *dicta* may be found asserting or assuming such exclusive jurisdiction. But there is no case in which that question has been adjudged. . . . And judges and commentators . . . have assumed the jurisdiction to be exclusive without inquiry. . . . and hence has arisen a sort of negative acquiescence in a doctrine often asserted, but never demonstrated nor decided.
The exact same can be said regarding the issue of grand jury standard of proof.
    It is not denied that *dicta* may be found asserting or assuming [a probable cause standard]. But there is no case in which that question has been adjudged. . . . And judges and commentators . . . have assumed [the probable cause standard] without inquiry. . . . and hence has arisen a sort of negative acquiescence in a doctrine often asserted, but never demonstrated nor decided.
In no case cited by the Government was the issue of the grand jury's standard of proof ever before the court.

10

Court itself has noted that the "grand jury may not always serve its historical role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor." *United States v. Dionisio,* 410 U.S. 1, 17 (1973).[9] As even the Government acknowledged to the Supreme Court:

> In contrast to a criminal trial, with its array of procedural and evidentiary safeguards, a grand jury investigation is a much less formal proceeding, and it is not patterned on the traditional adversary process. The grand jury conducts its investigation ex parte and receives evidence only from the prosecutor; neither the suspect nor his attorney is entitled to appear before the grand jury to testify or present evidence, to cross-examine witnesses, or otherwise to rebut the prosecutor's presentation. See *Calandra,* 414 U.S. at 343-344. The rules of evidence do not apply, and the grand jury is free to consider hearsay or other incompetent evidence as well as evidence that was illegally obtained. *Id.* at 345; *Costello,* 350 U.S. at 363. . . .and an indictment may be returned if a bare majority of the grand jurors concur.

*The Bank of Nova Scotia v. United States*, 1987 WL 880985 (U.S.), 10 (Brief of United States). The complete lack of all the safeguards the Government articulated above, is exactly why a standard greater than probable cause was in fact the standard circa 1791 and must be also today.

For the above reasons, the Indictment is a nullity and should be dismissed.

---

[9] Many have observed that the modern grand jury is not a robust check on prosecutorial discretion. *United States v. Navarro–Vargas,* 408 F.3d 1184, 1195 (9th Cir.2005) (en banc) (citing commentators and courts that have suggested that the modern grand jury is but a rubber stamp for the prosecution); *United States v. Budd,* 496 F.3d 517, 537 n. 9 (6th Cir.2007) (Cook, J. concurring and dissenting in part) (citing the adage that the grand jury "would indict a ham sandwich"). "Realistically, federal grand juries today provide little protection for criminal suspects whom a U.S. Attorney wishes to indict." *United States v. Ross,* 412 F.3d 771, 774 (7th Cir. 2005).

11

Dated: February 1, 2024          Respectfully submitted,

**ROGERS SEVASTIANOS & BANTE, LLP**

By:    */s/ John P. Rogers*
       John P. Rogers, #38743MO
       Attorney for Defendant
       120 S. Central Avenue, Suite 160
       Clayton, MO  63105
       (314) 354-8484/Facsimile
       (314) 354-8271
       jrogers@rsblawfirm.com

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on February 1, 2024, a copy of the foregoing was filed electronically via this Court's CM/ECF system, and therefore served on all parties of record.

                                                       /s/ *John P. Rogers*