UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 4:23-CR-00380-SRC-PLC |
| ) | |
| v. ) | |
| ) | |
| SONNY SAGGAR, M.D., and ) | |
| RENITA BARRINGER, ) | |
| ) | |
| Defendants. ) | |

**UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION
OF DEFENDANT'S MOTION TO MODIFY CONDITIONS OF BOND**

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Amy E. Sestric and Cort A. VanOstran, Assistant United States Attorneys for said District, and opposes Defendant Sonny Saggar, M.D.'s Motion to Modify Conditions of Bond (ECF No. 95):

**Introduction**

On July 26, 2023, a federal grand jury charged Dr. Saggar in a nine-count criminal health care fraud indictment. Dr. Saggar was not detained pending trial. However, given his United Kingdom citizenship and connections abroad, the Court imposed certain conditions of release to reasonably assure his appearance, including that he surrender his passports, that he abide by a curfew as directed by the Pretrial Services Office, and that he submit to location monitoring technology. In his Motion to Modify Conditions of Bond, Dr. Saggar asks the Court to remove his curfew and location monitoring. The United States opposes Dr. Saggar's requests.

**Dr. Saggar Is a Flight Risk, Warranting Location Monitoring and a Curfew**

As the Court recently concluded, Dr. Saggar "is a flight risk." (Jan. 31, 2024 Order, ECF No. 103, at 15.) His "ties to the United States are quickly deteriorating" (*id.*), and, by his "own admissions, he wants to live in England again, is willing to relinquish child custody, and wishes to pursue a career abroad." (*Id.* at 16.) Thus, the need for a location monitoring device and a curfew has only increased since this case was first indicted, and these conditions continue to be necessary to enable Pretrial Services to oversee Dr. Saggar's movements and to reasonably assure his appearance in this matter. 18 U.S.C. § 3142(c)(1)(B).

Dr. Saggar's arguments to the contrary are unavailing. He contends his recent retention of new counsel, "in spite of the likelihood of delay in his proceeding to trial, demonstrat[es] his intention and resolve to litigate this matter . . . ." (Mot. to Modify Conditions of Bond, ECF No. 95, ¶ 25.) The Court recently found, however, that "[i]nsofar as Saggar's comment . . . bears on this Court's flight-risk analysis, the Court observes that further delay of this case does not decrease but instead increases the risk of flight." (Jan. 31, 2024, Order, ECF No. 103, at 19.)

Dr. Saggar also contends that his codefendant, Renita Barringer, "does not face the same restrictions on her movement." (Mot. to Modify Conditions of Bond, ECF No. 95, ¶ 22.) However, unlike Dr. Saggar, Barringer does not have dual-citizenship or foreign connections, and she has not, to the Government's knowledge, expressed any desire to leave this country or abandon any of the many ties that she has to the United States.

For these reasons, Dr. Saggar's reliance on *United States v. Hutchins*, 298 F. Supp. 3d 1205 (E.D. Wis. 2017) is misplaced. There, the district court affirmed the magistrate judge's decision to remove the defendant's GPS monitoring and curfew. *Id.* at 1210. Although the defendant was a citizen of the United Kingdom with limited ties to the United States, *id.* at 1206, 1208–09, the

similarities to this case end there.  Unlike Dr. Saggar, the defendant in *Hutchins* had the support of the Pretrial Services Office in making his requests.  *Id.* at 1206–07.  Moreover, *Hutchins* did not involve a defendant who had expressly articulated his desire to move abroad and sever ties with the United States, and the defendant in *Hutchins* did not appear to be dealing with the myriad other adversities that Dr. Saggar is currently facing, such as an accumulation of outstanding civil liabilities, a contentious ongoing divorce case, a pending civil fraud lawsuit, and an investigation of his professional license by the state agency charged with overseeing Missouri medical doctors.

In fact, as district courts across the country have made clear, electronic location monitoring and stricter conditions, such as home detention, have been imposed on defendants who present far lower risks of flight than Dr. Saggar. *See, e.g.*, *United States v. Kiper*, No. 3:22-CR-00003-GFVT-MAS-1, 2022 WL 943958, at*3 (E.D. Ky. Mar. 29, 2022) (where there was "negligible proof that Defendant would flee," the court was "confident that conditions such as home detention . . . and electronic monitoring could reasonably assure [the defendant's] appearance"); *United States v. Homedes*, No. 5:22-CR-00033-KKC-MAS, 2022 WL 822153, at *5 (E.D. Ky. Mar. 18, 2022) ("The Court concludes that, given Defendant's relatively limited risks of flight or nonappearance on this record, the stated travel restrictions and home detention and monitoring conditions will reasonably assure his appearance this case."); *United States v. Cuong Cau Dang*, No. 13-CR-486-EJD (PSG), 2013 WL 4119426, at **4–5 (N.D. Cal. Aug. 9, 2013) (defendant who had lived with family in the United States for "decades" and whose "ties here clearly [ran] deep" would be subject to house arrest and electronic monitoring); *United States v. Hanson*, 613 F. Supp. 2d 85, 90–91 (D.D.C. 2009) (in case where there was "no strong circumstantial evidence indicating that" the defendant would flee, home detention and GPS monitoring were appropriate); *United States v. Demmler*, 523 F. Supp. 2d 677, 683 (S.D. Ohio 2007) ("electronic monitoring [would] adequately

3

alert law enforcement if [the defendant] attempt[ed] to flee," even though defendant was a "life-long resident of central Ohio and his family ties [were] limited to Ohio and the Midwest generally").

**Dr. Saggar Has Offered No Valid Reason to Adjust or Remove His Curfew**

Although, generally speaking, the United States would not object to reasonable adjustments to Dr. Saggar's curfew hours, he presently provides no valid reason on which to base such an amendment, much less the complete removal of a curfew. Dr. Saggar contends the currently imposed curfew hours are untenable for him because (1) he works at an urgent care facility from 10:00 a.m. to 6:00 p.m. (Mot. to Modify Conditions of Bond, ECF No. 95, ¶ 8), and (2) he supposedly has the regular responsibility of transporting his children to and from school and his wife's home in Wildwood, Missouri. (*Id.* ¶¶ 9–11.) Neither of these purported reasons justify amending his curfew hours.

First, assuming that the urgent care at which Dr. Saggar works is at the same location as the former downtown urgent care facility that is the subject of this case (916 Olive Street, in St. Louis, Missouri, 63101), that clinic advertises the availability of telemedicine—something Dr. Saggar could do from his home. (*See* 24/7 Urgent Care Website, **Exhibit 1** hereto, at 4.)

More concerningly, however, according to Dr. Saggar's wife, who has submitted a statement in this matter under oath, Dr. Saggar "personally, and through his divorce lawyer, has represented in the divorce case that he is not working and that he cannot get a job because no one will hire him with an outstanding federal indictment." (Aff. Of Laura Saggar, **Exhibit 2** hereto, ¶ 7.) Additionally, Ms. Saggar attests that there is no visitation order or shared schedule in the divorce case, and Dr. Saggar "does not drive any of our 3[1] children to or from school or to and

---

[1] Of the Saggars' three children, one is attending college in the United Kingdom. (*Id.* ¶ 5.)

4

from [her] home, at any time, including but not limited to after any alleged workday at 6:00 p.m."  (*Id.* ¶ 4.)  Nor does he "provide transportation for [their] 3 children to or from . . . any other location, for any reason at any time."[2]  (*Id.* ¶ 6.)

### Conclusion

For all of the foregoing reasons, the United States respectfully requests that the Court **DENY** Defendant's Motion to Modify Conditions of Bond (ECF No. 95).

Date:   February 2, 2024                     Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


*/s/ Amy E. Sestric*
AMY E. SESTRIC, #66219MO
CORT A. VANOSTRAN, #67276MO
Assistant United States Attorneys

---

[2] To the extent the Court wishes to further explore these topics, the Government respectfully suggests that the Court consult with the Pretrial Services Office, which likely has further detail as to how often, if ever, Dr. Saggar has requested curfew adjustments for the purpose of seeing or transporting the two minor children that currently live in Missouri.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all Counsel of Record.

*/s/ Amy E. Sestric*
AMY E. SESTRIC, #66219MO
Assistant United States Attorney