UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:23-CR-00380-SRC ) |
| SONNY SAGGAR, M.D., | ) ) |
| Defendant. | ) ) |

## UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Amy E. Sestric, Assistant United States Attorney for said District, and files its sentencing memorandum as to defendant Sonny Saggar, M.D. (the "defendant"). The Government opposes the defendant's request for a sentence of time-served and respectfully requests that the Court impose a sentence of 35 months of imprisonment and such other and further relief as the Court deems just and proper.

**I.      Background**

On August 15, 2024, the defendant pled guilty to one count of conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371. (Guilty Plea Agreement ("GPA"), ECF No. 157.) The United States and the defendant have accepted the Presentence Investigation Report ("PSR") (ECF No. 184), which calculates a Total Offense Level of 21 and a criminal history score of zero, placing the defendant in Criminal History Category I. (PSR ¶¶ 57, 62.) Accordingly, the defendant's advisory guideline imprisonment range is 37 to 46 months. (PSR ¶ 90.)

1

## II. Legal Standard

In imposing a sentence, this Court must consider the relevant factors enumerated in 18 U.S.C. § 3553(a) and "make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). Section 3553(a) instructs that this Court must:

> impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

*Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (cleaned up). Under the statute, this Court should also consider "'the nature and circumstance of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established by the Guidelines,' 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)).

## III. Nature and Circumstances of the Defendant's Crime

The following undisputed facts of this case demonstrate the seriousness of the defendant's offense.

### A. Overview of the Conspiracy

This healthcare fraud case originates out of two urgent and primary care facilities—one in downtown St. Louis and one in Creve Coeur—operated by the defendant, a medical doctor, and his office manager, co-defendant Renita Barringer ("Barringer"). (PSR ¶¶ 29-30.) The defendant and Barringer hired "assistant physicians" or "APs"—*i.e.* medical school graduates who have not completed a residency program—and then, along with their biller, "Co-Conspirator No. 2"—billed federal healthcare programs for those APs' services as if the defendant himself had performed them, even when the defendant was out of town. (*Id.* ¶¶ 16, 31-33.)

2

The defendant, who was enrolled in the Medicare and Missouri Medicaid programs, was aware that the use of APs at his clinics ran afoul of these government health care programs. Specifically, Medicare did not pay for services conducted by APs at all, and yet the defendant, with his co-conspirators, caused APs' services to be fraudulently billed to Medicare as if they had been performed by him. (*Id.* ¶¶ 24, 33.) Additionally, Missouri Medicaid only paid for services conducted by APs under certain conditions that the defendant knowingly failed to meet. (*Id.* ¶¶ 27, 32, 37-38.) These conditions included, among other things, that the APs were subject to strict supervision requirements by a licensed physician pursuant to a written "collaborative practice arrangement" or "CPA," and that they were only eligible to practice in medically underserved rural or urban areas in Missouri.[1] (*Id.* ¶¶ 17-18, 27, 32.)

The defendant and his co-conspirators also submitted fraudulent claims for services that were rendered by another individual, "Co-Conspirator No. 1." (*Id.* ¶ 35.) Co-Conspirator No. 1 was already under federal indictment in this District. (*Id.*) As a result, Co-Conspirator No. 1's Medicaid billing privileges were suspended. (*Id.*) Nonetheless, the defendant hired Co-Conspirator No. 1 to work at the Creve Coeur location of his urgent care facilities and concealed from Medicaid and Medicare that Co-Conspirator No. 1 was performing services by naming the defendant as the rendering provider in the claims for payment. (*Id.*)

As a result of the conspiracy, the defendant and Barringer caused a total loss of $742,528.07 in fraudulent claims for payment that were made by Medicare and Medicaid. (*Id.* ¶ 40.)

---

[1] Although the St. Louis location of the urgent care facilities qualified as medically underserved, the Creve Coeur location did not. (*Id.* ¶ 38.)

3

### B. Particularly Concerning Aspects of the Defendant's Participation in the Conspiracy

Certain details of the offense conduct highlight the lengths to which the defendant went in furtherance of the conspiracy. The below-described conduct was undertaken by the defendant in an effort to conceal that he was billing for services conducted by others for his financial benefit.

#### 1. The Defendant Lied to Other Physicians and the Missouri Board of Registration for the Healing Arts.

The defendant made material misrepresentations to both other physicians in the community and to the Missouri Board of Registration for the Healing Arts ("MBRHA"), the state agency that oversees compliance with the licensure procedures and supervision guidelines pertaining to APs. (*Id.* ¶¶ 22, 36.) Knowing that no one physician could legally supervise more than six APs (or other mid-level providers) at any given time, the defendant recruited and offered stipends of up to $480 per month to various physicians to induce them to sign up to be "collaborating physicians" for APs at his clinics. (*Id.* ¶¶ 21, 36.) When one physician asked what was required of a collaborating physician, the defendant replied, "Nothing, Except sign the form that agrees to be the [collaborating physician], once a year." (*Id.* ¶ 36.) The defendant and Barringer convinced the purported collaborating physicians to pre-sign forms that falsely represented that legitimate CPAs were in place and then, in turn, submitted these forms to the MBRHA to convince state regulators that the defendant's clinics were compliant. (*Id.*)

#### 2. The Defendant Knowingly Allowed Unqualified "Providers" to Render Unsupervised Medical Services for Which He Billed—Even During Times When He Was Out of Town.

The defendant knew that the APs he hired were not being adequately supervised and had not received proper training. (*Id.* ¶¶ 32, 37-38.) Rather than ensuring that APs received training and supervision from their purported assigned collaborating physicians, the defendant (and

4

Barringer) encouraged the APs to consult with each other regarding medical questions; text and WhatsApp messages found on Barringer's phone confirmed that the APs were using these communication methods to ask each other questions and "train" each other. (*Id.* ¶ 37.) As the defendant knew, APs frequently saw patients without a collaborating physician present, even though they had not undergone the threshold training requirements to do so. (*Id.* ¶¶ 32, 37.) At least one purported "collaborator" even stated that they never met any APs, never reviewed any medical files of any AP, and never "stepped foot in either clinic." (*Id.* ¶ 37.) The defendant continued to bill for services performed by APs as if he had done them himself—even during times when he was abroad. (*Id.* ¶ 39.)

### C. A Prison Sentence of 35 Months Reflects the Seriousness of the Crime, the Need for Deterrence, and Other Factors in 18 U.S.C. § 3553.

The Government asks the Court to impose a sentence of a term of 35 months' imprisonment—a term that falls slightly short of the guideline range. The United States' recommended sentence takes into consideration all relevant sentencing factors, including the defendant's acceptance of responsibility and steps toward an improved lifestyle that contributes meaningfully to society, as outlined in his Sentencing Memorandum and Request for Downward Variance (ECF No. 183). However, the United States remains resolute that a 35-month term of imprisonment is the appropriate sentence in this case in order "to promote respect for the law, to provide just punishment for the offense, [and] to afford adequate deterrence to criminal conduct . . . ." *Kimbrough*, 552 U.S. at 101. To grant the defendant's request for a sentence of time-served—which effectively represents a drastic downward variance to approximately six months' imprisonment—would not achieve these important sentencing goals.

**IV.     Conclusion**

WHEREFORE, the United States respectfully requests that the Court impose a sentence upon defendant Sonny Saggar, M.D., of a 35-month period incarceration and such other and further relief as the Court deems just and proper.

Date:   February 12, 2025                        Respectfully submitted,

                                                  SAYLER A. FLEMING
                                                  United States Attorney


                                                  */s/ Amy E. Sestric*
                                                  AMY E. SESTRIC, #66219MO
                                                  Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all Counsel of Record.

                                            */s/ Amy E. Sestric*
                                            AMY E. SESTRIC, #66219MO
                                            Assistant United States Attorney